IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SHARI LYNN ERICKSON                                                                                    PLAINTIFF

v.                                          CASE NO.         10-3113

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                      DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.  Procedural Background**

The plaintiff filed her applications for DIB and SSI on October 31, 2006, alleging an onset date of October 1, 2005 (T. 54), due to plaintiff's asthma / copd (T. 80).  Plaintiff's applications were denied initially and on reconsideration (T. 31, 39-41).  Plaintiff then requested an administrative hearing, which was held on July 3, 2008.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 43 years of age and possessed a high school education.  The Plaintiff had past relevant work ("PRW") experience as a manager /

assistant manager at a gas station and cook / deli worker (T. 21, 86, 180).

On January 23, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's asthma and obesity did not meet or equal any Appendix 1 listing. T. 13, 17. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work with additional limitation. T. 17. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform unskilled, sedentary work of 1) an inspector, sorter, weigher and 2) bench assembly work. T. 22.

## II. Applicable Law

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id*. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

      The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion

**A. Relevant Period**

      The ALJ first determined that the Plaintiff met the insured status requirements of the Social Security Act only through September 30, 2003 (T. 13). Plaintiff filed applications for benefits under both Title II and Title XVI of the Act in October 2006 and claimed her disability

had begun October 1, 2005 (T. 54). Realizing that this was outside the insured time period the Plaintiff moved to amend her disability onset date to September 2003 at the time of the hearing (T. 200).

To be entitled to a period of disability and DIB under Title II of the Act, a claimant must be both disabled and insured. 42 U.S.C. § 423(c); 20 C.F.R. § 404.131. Plaintiff must establish that her disability arose before the expiration of her date last insured, which was September 30, 2003 (Tr. 11). 20 C.F.R. §§ 404.101, 404.131, 404.320(b)(2); *see Pyland v. Apfel*, 149 F.3d 873, 876-77 (8th Cir. 1998). If a claimant becomes disabled after she has lost insured status, the claim must be denied. See *Hinchey v. Shalala*, 29 F.3d 428, 431 (8th Cir. 1994). Accordingly, for purposes of DIB, the relevant period runs from September 1, 2003, through September 30, 2003 (Tr. 11).

However, because SSI benefits are not payable prior to the date of the application, the relevant period for Plaintiff's SSI claim begins with her application date of October 31, 2006, and continues through January 23, 2009, the date of the ALJ's decision (Tr. 23). See 20 C.F.R. § 416.335.

The ALJ determined that the Plaintiff had severe impairments of asthma and obesity (T. 13) but she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (T. 17).

**B. Listed Impairments**

The Plaintiff first argues that the ALJ erred in failing to find that the Plaintiff met the listing requirements for 3.03 B (Asthma) (ECF No. 8, p. 7). The listing requirements for 3.03 B is as follows:

  B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

The first medical record in the file is February 1998 when the Plaintiff presented to the Crusader Clinic and Dr. Nishat noted that the Plaintiff was not on any medication and the exam was unremarkable. Dr. Nishat noted that the Plaintiff had smoked 3 ½ packs of cigarettes per day and that she had claimed to reduce that to six per day. Dr. Nishat encouraged her to "totally give up cigarettes". (T. 107). Plaintiff saw Dr. Nishat again in March 1998 for asthma exacerbation and was prescribed a ventolin[1] inhaler, prednisone [2] 40 mg for five days, and amoxicillin for seven days for bronchitis. She was again counseled about quitting smoking. (T. 106). When the Plaintiff was seen by Dr. Nishat in April 1998 she stated that she "was feeling fine" and had not had any asthma exacerbations. She admitted that she was still smoking "a little less than one pack a day". The Plaintiff was given a prescription for Habitrol patches to assist her in smoking cessation and she was referred to Don Crain to assist in stopping smoking. (T. 104). The Plaintiff did see Don Crain, R.N. for smoke cessation counseling in April 1998 (T. 103) and when she saw Dr. Nishat in June 1998 he noted that she had not had any emergency

---

[1] Ventolin (albuterol) is used to treat or prevent breathing problems in patients who have asthma or certain other airway diseases. See www.drugs.com

[2] Prednisone is in a class of drugs called corticosteroids. Prednisone prevents the release of substances in the body that cause inflammation. Prednisone is used to treat many different conditions such as allergic disorders, skin conditions, ulcerative colitis, arthritis, lupus, psoriasis, or breathing disorders. See www.drugs.com

room visits but did add an AeroBid inhaler to use regularly and to the Ventolin as needed (T. 102).

There does not appear to be any medical documentation of an asthma related event between June 1998 and March 2005.  On March 7, 2005 the Plaintiff presented to the Baxter Regional Medical Center "via ambulance from the jail in Yellville". (T. 131) Dr. Quevillon noted that she was reportedly having an asthma attack while at the jail but by the time she got to the BRMC she was feeling much better.  Dr. Quevillon also noted that as a result of the asthma attack she was released from the jail. She noted a significant smoking history for 30 plus years and that her only medication was albuterol. (Id.).  The Plaintiff went back to the BRMC on March 14, 2005 complaining of a soar throat and a cough.  The social history noted that the Plaintiff was still smoking 1/4 pack of cigarettes per day (T. 126) and she was ordered to discontinue smoking. (T. 125, 127).

The next asthma related hospitalization occurs on July 8, 2006 when the Plaintiff was seen at the BRMC.  She was admitted at 9:59 AM and discharged at 10:30 AM.  She noted that she was out of her medication and the hospital gave a prescription for an albuterol inhaler (T. 122).  The Plaintiff then presented to the Mountain Home Christian Clinic on July 20, 2006. Dr. John Bond diagnosed the Plaintiff with Asthma, intractable (chronic); not acute at this time and provided medication (T. 114).  The Plaintiff acknowledged that she was still smoking ½ pack of cigarettes per day and had for 30 years (T. 115).

The Plaintiff acknowledged that she "does not precisely meet the diagnostic criteria under listing 3.03 B as the record does not set forth asthma attacks requiring physician intervention once every two months or six times per year. (Id).  However, the Plaintiff contends

that she must have her breathing machine with her at all time (T. 193) and she contends that she now effectively can duplicate at home the treatment she would receive at any ER. (T. 192-193). The Plaintiff argues that the ALJ should have considered this the medical equivalent of the requirements in 3.03 B. (ECF No. 8, p. 7).

The Social Security Administration evaluates medical equivalency pursuant to 20 C.F.R. § 416.926 and 20 C.F.R. pt. 404, subpt. P, app. 1. Medical equivalency exists if the impairment "is at least equal in severity and duration to the medical criteria of the listed impairment." *Neal ex rel. Walker v. Barnhart*, 405 F.3d 685, 689 (8th Cir.2005). *See More ex rel. Moore v. Barnhart* 413 F.3d 718, 721 (C.A.8 (Ark.),2005).

20 CFR 404 3.00 C provides that:

> Documentation for these exacerbations should include available hospital, emergency facility and/or physician records indicating the dates of treatment; clinical and laboratory findings on presentation, such as the results of spirometry and arterial blood gas studies (ABGS); the treatment administered; the time period required for treatment; and the clinical response. Attacks of asthma, episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum), or respiratory failure as referred to in paragraph B of 3.03, 3.04, and 3.07, are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.

Here, although Plaintiff alleges she has "frequent asthma attacks and must use her updraft machine frequently," the regulations require "physician intervention occurring at least once every two months or at least six times a year." Plaintiff does not meet these requirements. The

question of whether a claimant meets a listed impairment is strictly a medical determination. *Cockerham v. Sullivan*, 895 F.2d 492, 496 (8th Cir. 1990); *see Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007) (claimant only offered testimony, not medical evidence to support her argument that she met a Listing).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). Where a listing requires proof of functional limitations, but claimant fails to present sufficient medical evidence of those limitations, an ALJ may conclude that the listing was not satisfied. *Dini v. Astrue* 2009 WL 2496929, 9 (D.Minn.) (D.Minn.,2009)

The Plaintiff argues that the ALJ failed in her duty to fully and fairly develop the record stating that in this case the "ALJ should have had at least a medical advisor to establish whether the claimant's condition meets or exceeds this listing" (ECF No. 9, p. 9). The Plaintiff's argument is impossible to understand because the listing for asthma requires the Plaintiff's condition to have "physician intervention occurring at least once every two months or at least six times a year". All medical evidence in the file clearly shows that the Plaintiff did not meet the listing requirements for asthma and sending the Plaintiff for a consultive evaluation could not have provided the necessary evidence.

## C. RFC

Based on the evidence as a whole, the ALJ found that Plaintiff retained the RFC to perform work at the sedentary level, including lifting and carrying 10 pounds occasionally and

less than 10 pounds frequently; sitting six hours; standing and walking for two hours.  The ALJ also determined that Plaintiff could not drive a vehicle; perform work at unprotected heights or around dangerous, life threatening equipment or machinery; climb scaffolds, ladders, or ropes; or work around concentrated dust, fumes, smoke, chemicals, or noxious gases, but that she could occasionally climb ramps and stairs and occasionally stoop, bend, crouch, crawl, kneel and balance. In addition, the ALJ determined that Plaintiff, secondary to fatigue, pain, side effects of medication, lack of restorative sleep, shortness of breach, must receive non-complex simple instructions that involved little judgment, the work must be routine and repetitive and learned by rote with few variables, she could only have superficial contact incidental to work with the general public and co-workers, and work must involve supervision that is concrete, direct, and specific (Tr. 17).

     RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a

claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

1. **Subjective Complaints**

The Plaintiff made numerous complaints of subjective pain which the ALJ properly noted. (T. 18).  The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they are inconsistent with the RFC (T. 18-19). The Plaintiff has not specifically argued that the ALJ made any error in her evaluation of the Plaintiff's subjective complaints.

The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey v. Astrue*, 503 F.3d 687 at 695 (8th Cir.2007) (*citing Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984).

The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

The court notes that the Plaintiff initially filed her application for disability on November 6, 2006 alleging an onset date of October 1, 2005. (T. 54). The Plaintiff's date last insured was September 30, 2003.  On January 5, 2007 the Plaintiff's attorney submitted a request that the onset date be amended to August 9/ 1999. (T. 37).  The Plaintiff had filed for disability alleging an onset of July 18, 2000 but that was denied on October 11, 2001(Id.). The Plaintiff was allowed to orally amend her onset date to September 2003 during the hearing.

The Plaintiff had minimal earnings in 1995 and no earnings in 1996 and 1997.  Her first documented medical record was for a pap smear in February 1998 (T. 107) and her first documented medical treatment for asthma exacerbation was March 1998 (T. 106) but by April she "was feeling fine" (T. 104).  There is no explanation for the poor work records in 1995-1997. An ALJ may consider a claimant's work record in his credibility analysis. *See Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (ALJ may consider that a claimants sporadic work record reflecting relatively low earnings and multiple years with no reported earnings that showed a lack of motivation to return to work).

The ALJ also pointed out that after her treatment at the Crusader Clinic in 1998 the Plaintiff did not receive any documented treatment for her asthma until March 2005 when the Plaintiff was incarcerated in the Yellville jail. (T. 131). When the Plaintiff was seen in the

BCMC after her release from jail they noted a history of asthma but no dyspnea.[3] (T. 125). After that incident the Plaintiff is not seen again medically for her asthma until July 8, 2006. (T. 122). In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability").

Any attempt by the Plaintiff to excuse her failure to pursue more aggressive treatment cannot be wholly excused due to her claims of financial hardship. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted). *Tate v. Apfel* 167 F.3d 1191, 1197 (C.A.8 (Ark.),1999).

The ALJ also noted that the Plaintiff had been repeatedly counseled and ordered by her treating physicians to stop smoking. Smoking and being overweight are two of the risk factors associated with asthma. (See www.mayoclinic.org. Viewed March 1, 2012). The Plaintiff admitted that her smoking habit had been 3 ½ packs of cigarettes per day prior to 1998 (T. 107) and in July 2006 she still admitted to ½ pack per day. In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating

---

[3] Difficulty in breathing, often associated with lung or heart disease and resulting in shortness of breath.

physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins,* 177 F.3d at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996), and quit smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997); *Choate v. Barnhart* 457 F.3d 865, 872 (C.A.8 (Mo.),2006)

      The ALJ also noted that the Plaintiff's symptoms were controlled with medication. (T. 106, 111, 114, 131, 150). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin*. 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

      The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him from performing any kind of work).

      Because "questions of fact, including the credibility of a claimant's subjective testimony, are primarily for the [Commissioner] to decide," the court's review is limited to determining whether the ALJ considered all the evidence relevant to Plaintiff's complaints and whether that evidence contradicted his account sufficiently that the ALJ could discount his testimony as not entirely credible. *Blakeman v. Astrue* 509 F.3d 878, 879 (C.A.8 (S.D.),2007) citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987). The court defers to the ALJ's credibility determination, especially where the testimony appears to indicate that plaintiff gave contradictory answers.

*Human v. Barnhart*, 2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006).

After careful review of the record, the court believes that the ALJ made a proper credibility determination of the Plaintiff's subjective complaints. Despite the ALJ's concerns about Plaintiff's credibility, she did not entirely ignore Plaintiff's complaints but instead balanced her subjective complaints against the objective medical evidence in arriving at an assessment of Plaintiff's RFC.

**2. Physical RFC assessment:**

The Plaintiff argues that "**no physician** in this case has provided an RFC assessment" and therefore the ALJ's RFC assessment is not sound (ECF No. 9, p. 5). The Plaintiff also states that "FCE by Dr. Payne is completely blank" and that the RFC in this case was "essentially determined solely by the ALJ based on her lay impressions of the medical records (Id., pp. 6-7). The Plaintiff's statements are incorrect, inaccurate and misleading.

Dr. Bill F. Payne, a consultive physician, rendered an Physical RFC assessment on February 5, 2007 (T. 133-140). Dr. Payne had the medical records from BRMC, Ahrens Clinic, and Mountain Home Christian Clinic. Based upon a review of the records Dr. Payne found that the Plaintiff had no Exertional Limitation (T. 134), no Postural Limitations (T. 135), no Manipulative Limitations or Visual Limitations (T. 136) and no Communicative Limitations (T. 137). Dr. Payne did note in the Environmental Limitations that the Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (T. 137). Dr. Payne's opinion was reviewed and affirmed by Dr. Jim Takach on July 5, 2007 (T. 143). Dr. Takach also noted that the Plaintiff's asthma "responds well to Rx with compliance" (Id.).

The objective evidence of record also supports the ALJ's RFC capacity assessment. The

ALJ noted that Plaintiff received treatment for asthma from 2004 through 2006 and received prescriptions for an Albuterol inhaler and Albuterol for her nebulizer (Tr. 14, 111-118). In September 2005, Plaintiff went to the emergency room for an asthma attack, received one Albuterol updraft, and was feeling "much better by her arrival" (Tr. 15, 131). In April 2007, Plaintiff reported she was "doing very well on asthma meds," and her records noted her asthma was "controlled" with medication (Tr. 150).

Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

During the July 2006 emergency room visit, Plaintiff had been out of medication for approximately one year, stating that she could not afford them, but the ALJ noted that Plaintiff could continue to buy cigarettes (Tr. 15, 122). The Plaintiff acknowledged a 3 ½ packs of cigarettes per day habit in 1998 (T. 108) and in 2006 acknowledge that she had smoked for 30 years (T. 131, 154). Her doctor in 1998 talked to her about smoking cessation (T. 106) and she was seen by a nurse and prescribed a patch to assist her in stopping smoking (T. 104). In July 2006 she was still smoking ½ pack per day (T. 115).

A claimant's inability to afford medical services cannot be used as a basis for a denial of benefits. *See Tang v. Apfel*, 205 F.3d 1084, 1086 (8th Cir. 2000). However, Plaintiff has not shown that she exhausted all of the possible alternatives to receiving treatment at a reduced rate

or free of charge. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992) (noting that financial hardship must be taken into account, but there was no evidence that the claimant sought low-cost medical treatment from her doctor, or from clinics or hospitals).

The ALJ also noted that the Plaintiff refused steroid treatment in July 2006 (Tr. 15, 122). "The ALJ may properly consider both the claimant's willingness to submit to treatment and the type of medication prescribed in order to determine the sincerity of the claimant's allegations of pain." *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir.1991) (citations omitted). *Gray v. Apfel* 192 F.3d 799, 804 (C.A.8 (S.D.),1999)

Notwithstanding the Plaintiff's assertions the record does contain a valid Physical RFC assessment.

### 3. Neuropsychological Evaluation

On July 7, 2008, after the hearing before the ALJ and at the request of her attorney, the Plaintiff presented to Dr. Vann Smith, for a Neuropsychological Evaluation. The ALJ gave no weight to the report and opinion of Dr. Smith and set forth her reasons at length in her opinion. (T. 20). The Plaintiff has not alleged any error on the part of the ALJ in her discounting the opinion of Dr. Smith. The court has reviewed the record and finds that the rationale for the ALJ's disregarding the opinion of Dr. Smith is sound and supported by the record.

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supports the Commissioner's decision that Plaintiff was not disabled at any time from September 1, 2003, through September 30, 2003 (Tr. 11), and October 31, 2006, through January 23, 2009, the date of the ALJ's decision (Tr. 23), and thus the decision should be affirmed. The

undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

 Dated this March 2, 2012.

            /s/ J. Marschewski
           HONORABLE JAMES R. MARSCHEWSKI
          CHIEF UNITED STATES MAGISTRATE JUDGE